IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| **The Arkansas State Conference NAACP**, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>**The Arkansas Board of Apportionment**, et al.,<br><br>Defendants | Case No. 4:21-cv-1239-LPR<br><br>**Plaintiffs' Brief in Support of Their Motion for Recusal** |

The plaintiffs respectfully submit this brief in support of their motion for recusal under 28 U.S.C. § 455. Recusal is appropriate here because Judge Rudofsky's impartiality with respect to defendants Rutledge and Hutchinson might reasonably be questioned under the circumstances of this case.

## Background

This is an action under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, challenging the newly adopted reapportionment plan for

the Arkansas House of Representatives. The plaintiffs are non-partisan, non-profit, interracial membership organizations, and they seek declaratory and injunctive relief on the ground that the plan dilutes Black voting strength. The defendants are the Arkansas Board of Apportionment, which drew the plan; the three state officials who comprise the Board (Governor Asa Hutchinson, Attorney General Leslie Rutledge, and Secretary of State John Thurston); and the State of Arkansas itself.

Because of their roles in the reapportionment process, Attorney General Rutledge and Governor Hutchinson are likely to be witnesses in this case. *See, e.g.*, *Jeffers v. Beebe*, 895 F. Supp. 2d 920, 937 (E.D. Ark. 2012) (citing the testimony of the Governor and Attorney General in a case challenging Arkansas Board of Apportionment's reapportionment plan following 2010 census). They were key decisionmakers in adopting the challenged plan and, under the applicable law, their justification for the plan is a relevant circumstance. *See, e.g., Thornburg v. Gingles*, 478 U.S. 30, 45 (1986) (evidence regarding the policy underlying the challenged practice "may have probative value"). It is quite common in redistricting cases for legislators and other officials who were

responsible for adopting a challenged plan to be critical witnesses who testify at trial and/or through deposition.

The case has been assigned to the Honorable Lee Rudofsky, United States District Judge in the Eastern District of Arkansas, who, prior to his appointment to the bench in 2019, made contributions to Rutledge and Hutchinson's most recent campaigns for their current terms in office; held a fundraiser for Rutledge; and was appointed to the role of Arkansas Solicitor General by Rutledge, and served under her for a number of years. According to public records, Judge Rudofsky and his wife hosted a fundraiser at their home in 2018 for the reelection campaign of Attorney General Leslie Rutledge, one of the named defendants in this case who is also likely to be a witness. (Exhibit 1: Rudofsky Judicial Questionnaire at 25.) Rutledge had previously appointed Judge Rudofsky to his former position of Arkansas Solicitor General in 2015, and Judge Rudofsky worked for Rutledge in that role from 2015 to 2018. (*Id.* at 24, 29.) According to other public records, Judge Rudofsky also donated $1,000 to Rutledge in 2017 and $500 in 2018 to candidate Asa Hutchinson, another one of the named defendants in this case who is likely to be a witness. (Exhibit 2: Political Donations

of Lee Rudofsky, OpenSecrets, https://www.opensecrets.org/donor-lookup/results?cand=&cycle=&employ=&name=Lee+Rudofsky&state=AR&zip=.)

Because this case involves a statewide redistricting plan and a claim of racial discrimination leveled against the state's highest elected officials, this is a case of significant public importance, and one that is likely to be scrutinized closely by the media and by the public at large. Thus, avoiding even the appearance of partiality is crucial for ensuring public confidence in the judicial system and respect for the ultimate outcome of this action.

## Discussion

The relevant part of Section 455 provides as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party … ;

The test for disqualification under Section 455 is not whether the judge in fact lacks partiality. Rather, it "is one of objective reasonableness,

that is, whether the judicial officer's impartiality might reasonably be questioned under the circumstances." *Lunde v. Helms*, 29 F. 3d 367, 370 (8th Cir. 1994). "It is well established that the recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (internal quotes omitted); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2nd Cir. 2012) ("The question ... is whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal.") (internal quotes omitted); *Burton v. Ark. Sec'y of State*, No, 4:11-cv-00710, 2015 WL 11090414, at *4 (E.D. Ark. Feb. 26, 2015) (Baker, J.).

Here, Judge Rudofsky's support for the most recent candidacies of two defendants in this matter could lead a reasonable observer to question his impartiality toward those defendants. Judge Rudofsky's donations to Hutchinson and Rutledge are substantial and recent. His hosting of a fundraiser for Rutledge, moreover, suggests a connection that goes beyond casual politics and gives the appearance of impropriety.

These connections could plainly matter in this case. Hutchinson and Rutledge are two of the three members of the Arkansas Board of Apportionment, which drew the challenged plan. Their testimony is relevant under the applicable law. The plaintiffs will likely depose both of them, and they could very well be called to testify, whether by the plaintiffs or in their own defense, or both. Whoever presides over this case will undoubtedly have to make decisions that directly affect both of them. This is especially so because this is a bench trial. Thus, Judge Rudofsky will not only be making legal determinations, but would be called on as the trier of fact to make determinations as to the credibility of both of these witnesses. At a minimum, an "objective, disinterested observer" would question Judge Rudofsky's ability to make such determinations impartially as to his boss for three of the last six years who appointed him to his position as Arkansas Solicitor General and for whom he hosted a political fundraiser less than four years ago. *See supra* 2.

This case is somewhat akin to *United States v. Bobo*, 323 F. Supp. 2d 1238 (N.D. Ala. 2004), where a judge recused himself because he determined that a reasonable observer could question his impartiality in

a matter involving corruption allegations against Don Siegelman, the former Governor of Alabama. The judge disclosed that he was a distant relative of Siegleman's opponent, Bob Riley, and that he had attended a fundraiser for Riley's most recent campaign even though he had made no donation. *Id.* at 1239-40. Here, by contrast, Judge Rudofsky's connection is not with a political opponent of a party but with two of the defendants themselves. Judge Rudofsky did not merely attend a fundraiser without contributing; he *hosted* a fundraiser and gave substantial contributions. And unlike *Bobo*, this matter is a bench trial where Judge Rudofsky would serve as the finder of fact. *See supra* pp. 2-3. The appearance of partiality is thus much greater here than in *Bobo*, where recusal was found to be appropriate under Section 455. *See Bobo*, 323 F. Supp. 2d at 1243.

      The *Burton* case is also instructive. That 2015 decision by Judge Baker of this District involved Mr. Burton's termination from employment with then-Secretary of State Charlie Daniels' office. Daniels' successor, Secretary of State Mark Martin, moved for recusal against Judge Baker on the ground that she had co-hosted a fundraiser in 2010 for Pat O'Brien, who had been running against Daniels for

Secretary of State at that time. *Burton, supra*, at *1. Judge Baker denied the Secretary's motion because Burton's allegations stemmed from his termination by Daniels—not Martin—and because Martin was merely a nominal defendant under *Ex Parte Young*, 209 U.S. 123 (1908), in his official capacity by operation of law, based on his having succeeded Daniels as the Secretary of State. *Burton, supra*, at *6-8. In doing so, however, Judge Baker noted that O'Brien remained on her recusal list in 2015—five years after her 2010 fundraiser and campaign contribution. *Id.*, at *1. Here, of course, Judge Rudofsky's fundraiser and contributions are more recent than that. And they were not to the opponent of the predecessor to a nominal defendant; Judge Rudofsky is connected directly to two of the defendants who are likely to be key witnesses in the case. *See supra* 2-3.

    Canon 2 of the Code of Conduct for United States Judges recognizes that political connections can create the appearance of partiality. (Exhibit 3: Code of Conduct for United States Judges, Canon 2 (2019) ("A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities"), *available at* https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-

judges.) Indeed, Canon 5 prohibits all political activity by sitting federal judges for that reason. *Id.* at Canon 5 ("A Judge Should Refrain From Political Activity"). There is no bright line when it comes to pre-appointment political activity, however, and the decisions under Section 455 depend heavily on the particular circumstances of each case. While "[t]he fact of past political activity alone will rarely require recusal," *Higganbotham v. Oklahoma ex rel. Oklahoma Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003), the circumstances here go well beyond mere past political activity or affiliation. The circumstances here involve recent and substantial political support for two of the three defendants. A reasonable objective observer would see an appearance of partiality under these circumstances.

## Conclusion

An independent and honorable judiciary is indispensable to justice in our society. Deference to the judgments and rulings of the courts depends on public confidence in the integrity and independence of judges. That is especially true in cases of significant public importance and scrutiny such as this one and one in which the judge will make not only the legal determinations, but also findings of fact and other

credibility determinations. Every detail of this case is likely to be reported widely. The appearance of partiality must be avoided, and "a party aware of alleged grounds for a trial judge's disqualification [is] obligated to present the motion to that judge." *United States v. Fiske*, 968 F. Supp. 433, 435 (E.D. Ark. 1996).

Because the circumstances of this case could cause a reasonable member of the public to doubt Judge Rudofsky's impartiality in decisions affecting two of the three individual defendants, the Court should grant the plaintiffs' motion for recusal.

Dated: December 31, 2021                Respectfully Submitted,


                                         Bryan L. Sells (*PHV* Admitted)
                                         Email: bryan@bryansellslaw.com
                                         THE LAW OFFICE OF
                                         BRYAN L. SELLS, LLC
                                         Post Office Box 5493
                                         Atlanta, Georgia 31107-0493
                                         Tel: (404) 480-4212 (voice and fax)


Gary Sullivan (AR Bar: 92051)            Ceridwen Cherry (*PHV* Admitted)
Email: gary@acluarkansas.org             Email: ccherry@aclu.org
ARKANSAS CIVIL LIBERTIES                 AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, INC.                   UNION, VOTING RIGHTS
                                         PROJECT
                                         915 15th St NW

10

904 West 2nd Street
Little Rock, AR 72201
Tel: (501) 374-2842

Jonathan Topaz (*PHV* Admitted)
Email: jtopaz@aclu.org
Sophia Lin Lakin (*PHV Pending*)
Email: slakin@aclu.org
AMERICAN CIVIL LIBERTIES UNION, VOTING RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

Luke Reilly (*PHV* Admitted)
Email: luke.reilly@dechert.com
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000 | (215) 994-2222

Washington, DC 20015
Tel: (202) 457-0800

Neil Steiner (*PHV* Admitted)
Email: neil.steiner@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of The Americas
New York, NY 10036 – 6797
(212) 698-3500 | (212) 698-3599

Angela Liu (*PHV* Admitted)
Email: angela.liu@dechert.com
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
(312) 646-5800 | (312) 646-5858

Matthew F. Williams (*PHV* Admitted)
Email: matthew.williams@dechert.com
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104-4446
(415) 262-4500 | (415) 262-4555

*Attorneys for the Plaintiffs*