IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THE ARKANSAS STATE CONFERENCE NAACP, *et al.*,                              PLAINTIFFS,

v.                       Case No. 4:21-cv-01239-LPR

THE ARKANSAS BOARD OF APPORTIONMENT, *et al.*                               DEFENDANTS.

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECUSAL

Defendants object to Plaintiffs' motion for recusal.  Plaintiffs seek recusal because of the Court's pre-judicial support of two of the three individual official-capacity defendants.  But Plaintiffs concede that pre-judicial political affiliation alone does not warrant recusal, and the facts they say make this case different—that the affiliation took the form of contributions and fundraising, and that the two defendants in question might testify—do not.  Moreover, the two defendants at issue are unlikely to remain in the case, as they have been sued over legislative activity, rather than enforcement of the districting plan Plaintiffs challenge.  The motion should be denied.

1.     Plaintiffs concede that "[t]he fact of past political activity alone will rarely require recusal." (DE 28 at 9 (quoting *Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003)).)  That is an understatement.  "Courts that have considered whether pre-judicial political activity is also prejudicial regularly conclude that it is not." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (Easterbrook, J.).  Courts have held that "friendship" with politicians does not "affect impartiality in official-action suits" against them. *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 917 (2004) (Scalia, J.)  They have held that connections between a defendant and politicians who spearheaded a judge's nomination do not create a

reasonable appearance of potential bias. *See Home Placement Serv., Inc. v. Providence J. Co.*, 739 F.2d 671 (1st Cir. 1984); *In re United States*, 666 F.2d 690 (1st Cir. 1981); *cf. Mason*, 916 F.2d at 386, 387 (glossing these cases as involving "sponsorship" by a "judge's patron"). And they have held that a judge's pre-judicial contributions to an official-capacity defendant are not disqualifying. *See id.* at 387.

2. Indeed, when the Sierra Club famously sought Justice Scalia's recusal from an official-capacity suit against Vice President Cheney on account of their going on a duck hunt, Justice Scalia could find not a single instance of recusal on account of political affiliation that "involve[d] an official-action suit." *Cheney*, 514 U.S. at 922. And Plaintiffs cite no case in which a judge held he was required to recuse under 28 U.S.C. 455 on account of political affiliations with an official-capacity defendant. *See infra* ¶¶ 8-9 (addressing the two cases Plaintiffs cite as authority for recusal).

3. The consensus that judges need not recuse on account of pre-judicial political support of, or even continuing friendships with, politicians sued in their official capacity exists for at least two reasons. The first is necessity, and the consequences for perceptions of the judiciary that follow. "It is common knowledge . . . that the first step to the federal bench for most judges is either a history of active partisan politics or strong political connections." *Home Placement Serv.*, 739 F.2d at 675. And "[m]uch contemporary litigation challenges the conduct of government, so that many judges are asked to decide whether those whose political goals the judges share (or oppose: there is no difference) have conducted their offices in keeping with the Constitution and laws." *Mason*, 916 F.2d at 386-87. The consequence of these two realities is that requiring recusal on account of pre-judicial political affiliation—or opposition—"would be utterly disabling." *Cheney*, 541 U.S. at 916. And given just how commonplace and unavoidable

it is for judges to adjudicate suits against their "political friends," reasonable observers understand that doing so does not undermine a judge's impartiality. *Mason*, 916 F.2d at 387.

4. The second reason that recusal in such cases is not the rule—and to the contrary, is unheard-of—is the distance created by official-capacity suits. Official-capacity suits "seek relief not against [the defendant officer] personally, but against the Government." *Cheney*, 541 U.S. at 917. If they leave office, a new officer steps into their shoes. *Id.* Thus, they generally "have no bearing upon the reputation and integrity" of the defendants. *Id.* at 919. And though there "could be political consequences" for an official if the government loses an official-capacity suit against him, *id.* at 920, it would be inappropriate for judges to forecast which official-capacity suits might have political consequences in ruling on recusal motions; that would "ask judges to do precisely what they should not do." *Id.*

5. Plaintiffs' principal submission—and attempt to distinguish this uniform body of law—is that this case is different because here, pre-judicial political affiliation took the form of campaign contributions, and helping to raise campaign contributions from others. This, they claim, takes the affiliation in question "beyond [the realm of] casual politics." (DE 28 at 5.) But as Judge Easterbrook wrote of then-District Judge Tinder when—just as in this case—plaintiffs sought his recusal on account of campaign contributions to official-capacity defendants in a Voting Rights Act suit, the fact that "he supported the local candidates of the Republican Party . . . cannot come as a big surprise to the plaintiffs, given the party holding the White House when Tinder became . . . a judge." *Mason*, 916 F.2d at 386. Contributions and holding fundraisers are a large part of how people who are involved in partisan politics—as judicial nominees more often than not are—show their support for their preferred party. And "[c]ontributions raise less

doubt" of impartiality than closer sorts of political ties that have been held non-disqualifying, like friendships or relationships with politicians who advanced a judge's nomination. *Id.* at 387.

6. Plaintiffs also argue that Governor Hutchinson and Attorney General Rutledge are not just named defendants in this case, but likely witnesses, as they helped draw the challenged districting plan. Plaintiffs may well seek to call them as witnesses, and Plaintiffs are correct that their justification for the plan is a potentially relevant factor in this case. (DE 28 at 2.) But it does not follow, as Plaintiffs claim it does, that the Court will have to make credibility determinations about whether those defendants subjectively believed in the justifications they may offer. (*Id.* at 5.) Plaintiffs have not made a discriminatory-intent claim; the subjective purposes motivating the plan are not, therefore, at issue here.

7. Rather, what is potentially at issue, like in a constitutional challenge to a state statute, is the legal adequacy of the state interests the State offers, and whether, as a factual matter, those interests could have been achieved via other means, such as the plan Plaintiffs propose. That the Court may have to resolve that kind of dispute no more undermines its impartiality than past contributions to a state legislator would prevent the Court from fairly adjudicating whether a bill he sponsored pursued compelling interests and was narrowly tailored to them. And even if credibility were at stake, the Court's having once supported a witness's political campaign is simply not enough to cause a reasonable observer to doubt whether the Court could fairly judge her credibility.

8. Perhaps the best argument against Plaintiffs' motion is the weakness of the authority they have assembled to support it. Plaintiffs only cite two cases that they claim support recusal here, and in neither did a court hold that it was required to recuse on account of supporting—or opposing—an official-capacity defendant. In *Burton v. Ark. Sec'y of State*, No.

4:11-cv-00710-KGB, 2015 WL 1190414 (E.D. Ark. Feb. 26, 2015), Judge Baker declined a request to recuse from a suit against Arkansas's Secretary of State, in his official capacity, on the ground that she hosted a fundraiser for the candidate that the Secretary of State defeated. Plaintiffs point out that Judge Baker listed the unsuccessful candidate, though not his elected opponent, on her recusal list.  (DE 28 at 8 (citing *Burton*, 2015 WL 1190414, at *1).)  Judge Baker did not explain, as it wasn't at issue, why she listed that candidate, and it can't be assumed that the sole basis was fundraising activity.  More importantly, the unsuccessful candidate was just that: an unsuccessful candidate, suable only in his individual capacity, where there would be a greater risk of personal bias.  Judge Baker declined to recuse from hearing an official-capacity suit against the Secretary of State whom she actively opposed through her fundraising efforts. And as Judge Easterbrook has written, "there is no difference" for purposes of recusal between politically supporting a party and politically opposing him.  *Mason*, 916 F.2d at 387.  Thus, *Burton* is quite on-point precedent for denying recusal here.

9.      Plaintiffs also cite *United States v. Bobo*, 323 F. Supp. 2d 1238 (N.D. Ala. 2004), claiming it held a political tie justified recusal.  The facts of *Bobo* are complicated; the important point, for these purposes, is that the court in *Bobo* actually "determined that he was not required under 28 U.S.C. §§ 144 and 455 to recuse," as Judge Baker observed when *Bobo* was cited to her as authority for recusal in *Burton*.  *Burton*, 2015 WL 11090414, at *8.  After reaching that conclusion, the court recused *sua sponte*, reasoning that even "spurious suggestions for recusal" should be heeded in politically sensitive cases in order to avoid "do[ing] anything that is damaging to confidence in the integrity and impartiality of the federal judiciary."  *Bobo*, 323 F. Supp. 3d at 1243.

5

10. The court's decision in *Bobo* was certainly well-intended. But to the extent Plaintiffs suggest the Court should follow *Bobo* and recuse *sua sponte* even if recusal is unwarranted under Section 455, following that course would be unwise. Granting requests for recusal over mere pre-judicial political support of named defendants would not burnish the judiciary's reputation, but contribute to tarnishing it. It would help create an appearance that recusal in such cases is justified, and that the judges who deny requests for recusal in such cases—as almost all do—act unethically and are potentially biased. It would encourage other recusal requests that are ungrounded in statute, and allow litigants before this Court to use thin grounds for recusal to judge-shop. As Justice Scalia wrote when presented with a similarly weak request for recusal, "[t]he people must have confidence in the integrity of the [courts], and that cannot exist in a system that assumes them to be corruptible by the slightest friendship or favor." *Cheney*, 541 U.S. at 928.

11. Finally, Governor Hutchinson and Attorney General Rutledge are likely to be dismissed from this suit, so past political support of them does not merit recusal. State officials have absolute immunity from suit for their legislative activity. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Whether an activity is legislative is a functional question, not one of the title that the official engaged in the activity holds. *See Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (holding a mayor acted as a legislator when he proposed a budget to his city council and signed an ordinance into law); *Sup. Ct. of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734 (1980) (holding state supreme court justices acted as legislators when regulating the state bar). The Board of Apportionment's members exercise quintessentially legislative authority when they draw state legislative-districting maps. *See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 300-02 (D. Md. 1992) (holding that a governor

and a committee that advised him had legislative immunity from suit under the Voting Rights Act for proposing a redistricting plan to the legislature and advising the governor on that plan, respectively); *Hall v. Louisiana*, 974 F. Supp. 2d 944, 954-57 (M.D. La. 2013) (holding Louisiana's state legislators were immune from suit under the Voting Rights Act for their redistricting activity). The proper officials to sue in this case, as in any case challenging a state statute, are those who implement and enforce the law the Board wrote, not the officials who wrote it. Here, that would be the State's election officials, such as the Secretary of State.

## CONCLUSION

The Court should deny Plaintiffs' motion to recuse.

Dated: January 4, 2022

                                                  Respectfully submitted,

                                                  _____

                                                  LESLIE RUTLEDGE
                                                  Arkansas Attorney General

                                                  Asher L. Steinberg (2019058)
                                                  Assistant Solicitor General
                                                  OFFICE OF THE ARKANSAS
                                                  ATTORNEY GENERAL
                                                  323 Center Street, Suite 200
                                                  Little Rock, Arkansas 72201
                                                  Tel: (501) 682-1051
                                                  Fax: (501) 682-2591
                                                  *Counsel for Defendants*