1    IN THE UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF ARKANSAS
2       CENTRAL DIVISION

3 ARKANSAS STATE CONFERENCE NAACP, et al.,

4      Plaintiffs,

5  v.        No. 4:21CV01239 LPR

6          January 11, 2022
          Little Rock, Arkansas
7          1:18 PM
 ARKANSAS BOARD OF APPORTIONMENT, et al.,
8
      Defendants.
9
     TRANSCRIPT OF TELEPHONE CONFERENCE
10    BEFORE THE HONORABLE LEE RUDOFSKY,
     UNITED STATES DISTRICT JUDGE
11     _____

12 APPEARANCES VIA TELEPHONE:

13 On Behalf of the Plaintiffs:
   MR. BRYAN SELLS, Attorney at Law
14    The Law Office of Bryan Sells, LLC
    Post Office Box 5493
15    Atlanta, Georgia  31107-0493

16   MS. ANGELA LIU, Attorney at Law
    Dechert LLP
17    35 West Wacker Drive, Suite 3400
    Chicago, Illinois  60601
18
   MR. LUKE M. REILLY, Attorney at Law
19    Dechert LLP
    2929 Arch Street
20    Philadelphia, Pennsylvania  19104

21   MS. CERIDWEN CHERRY, Attorney at Law
    American Civil Liberties Union
22    915 15th Street NW
    Washington, DC  20015
23
   MR. JONATHAN TOPAZ, Attorney at Law
24    American Civil Liberties Union
    125 Broad Street, Suite 1800
25    New York, New York  10004

1

2     APPEARANCES CONTINUED:

3   On Behalf of the Plaintiffs:

4       MR. GARY L. SULLIVAN, Attorney at Law
          ACLU of Arkansas
5         904 West 2nd Street, Suite One
          Little Rock, Arkansas  72201
6

7   On Behalf of the Defendants:

8       MR. ASHER STEINBERG, Attorney at Law
          Arkansas Attorney General's Office
9         323 Center Street, Suite 200
          Little Rock, Arkansas  72201
10

11

12

13

14

15

16

17

18

19

20

21

22       *Proceedings reported by machine stenography.  Transcript
      prepared utilizing computer-aided transcription to the best of
23    my ability.*

24

25

```
1              (Proceedings commencing in open court at 1:18 PM.)
2              THE COURT:  Good afternoon everybody.  Thank you for
3    joining.  For the record this is Arkansas State Conference
4    NAACP, et al. versus Arkansas Board of Apportionment, et al.,
5    Case Number 4:21CV01239.  You all are on the telephone.  I am
6    here in the courtroom.  And while I normally do these from
7    chambers, we got a request for this telephone hearing to be
8    made easily accessible to the public, a request I am happy to
9    honor.  So just so you all know, we have with us one member of
10   the public, I believe the Dem-Gaz reporter.  Just wanted to
11   give you all a heads up on that.  He's here in the courtroom
12   with us.
13         Also here in the courtroom with us is my courtroom
14   deputy, Heather Clark, two of my law clerks, and our court
15   reporter.  The court reporter, of course, being the most
16   important person in this endeavor.  Given that we have about
17   1980s technology back here in the courtroom, I want to make
18   sure we all do our best to speak very slowly and very loudly
19   and very clearly.  I will try to do my best, I'm sure you will
20   all try to do your best, but I want to do that so we can get a
21   good record for the court reporter.  Additionally, let's try as
22   I'm sure we all do anyway not to interrupt each other.
23         Similarly, if for some reason when I call on you all, I
24   do not use your names but I refer to you, for example, as
25   plaintiffs or defendants or we just sort of naturally have a
```

1   conversation, each time you speak, if you would introduce
2   yourself again and who you are representing, that would be very
3   helpful for our court reporter to get a good record.  I have
4   asked our court reporter if we're breaking these rules, or for
5   some other reason she can't get a good record, she shouldn't
6   just sit there quietly, she should interrupt us and let us know
7   so we can fix whatever problem there is.  So if she does that,
8   please understand she is doing that at my request and on my
9   behalf.

10          I think I understand the following folks are present for
11  the plaintiffs:  Ms. Liu, Mr. Sells, Ms. Cherry, Mr. Sullivan,
12  Mr. Topaz, Mr. Reilly, and Ms. Lakin.  Have I left anybody else
13  off for the plaintiffs?  Hearing nobody, I'm going to assume I
14  haven't left anybody off.  Then for the defendants, I think I
15  understand Mr. Steinberg is on the call.  Is that correct?

16          MR. STEINBERG:  That's correct.

17          THE COURT:  Mr. Steinberg, anybody else with you
18  today?

19          MR. STEINBERG:  Not that I know of.

20          THE COURT:  Okay.  I'll take that.  This should be
21  quick and painless, I hope.  The reason I got us all together
22  is really just to have an administrative discussion about the
23  preliminary injunction hearing.  And while I don't have a
24  calendar in front of me, I think if I remember correctly, we're
25  talking about the 28th, I think to start this, whatever the

1   Thursday is of that week.  Heather, nod to me if I'm right

2   about the 28th.  No, I'm not.  The 27th.  So we're going to

3   start on the 27th.  Which is the Thursday of that week.

4        The real things I wanted to talk to you about was I

5   remember from my time in private practice that sometimes when a

6   judge set a preliminary injunction hearing, it was not clear

7   whether the judge was interested in legal argument or factual

8   development or both.  I know I've obviously made it clear that

9   I want both factual development and legal argument, but I

10  wanted to put a little bit of a finer point on that and then I

11  wanted to open it up for you all to ask questions, either

12  clarification questions or any other questions you had of an

13  administrative nature.

14       What I want to say about the preliminary injunction

15  hearing is that I believe it is going to be important for me to

16  hear from the plaintiffs' experts on the stand subject to

17  cross-examination.  I also believe it may be important to hear

18  from plaintiffs' factual declarants.  I'm not sure if that's

19  really going to be an issue, but it will at least be important

20  that all of plaintiffs' factual declarants are here.  And I

21  think there what I'm specifically talking about is whoever is

22  going to provide a declaration or affidavit about both

23  plaintiffs' memberships, but if there's any other factual sort

24  of lay witness declarants, I'm going to want to have them here

25  as well.

1       Of course the same goes -- we haven't, of course, gotten

2   a response yet from the defendants, but the same rules will

3   apply to the defendants.  If the defendants are going to

4   respond with experts and expert reports, I am going to want

5   those witnesses here.  I think this is a very factual intensive

6   case, and I am certainly going to need both side's experts to

7   explain their reports and declarations and statements and the

8   numbers and calculations they've come up with and just as well

9   to be subject to cross-examination.  So, Mr. Steinberg, the

10  same really goes for you.  If you have factual or expert

11  witnesses that you are relying on for your response, I am going

12  to expect them to be here for the preliminary injunction

13  hearing.

14      I will also say that I have no idea how long this

15  preliminary injunction hearing will last.  One thing I'd like

16  both sides to sort of think about and give me their thoughts on

17  is how long they think this is going to last.  I will tell you

18  given the need for a quick resolution of the PI question, if we

19  are not done by Friday evening, I intend for us to continue on

20  Saturday.  If we are not done by the end of Saturday, we will

21  take a rest for Sunday and then we will be back at it Monday

22  morning.  So that is really what I wanted to say to you all,

23  but I do want to give you all a chance to ask any questions,

24  whether clarifying or other questions.  Why don't we start with

25  the plaintiffs.

1          MR. SELLS:  Thank you, Judge.  This is Bryan Sells

2    for the plaintiffs.  I'll ask the elephant in the room

3    question, which is we understand that there is a general order

4    canceling all in-person proceedings in the district, but that

5    is subject to exception by the presiding judge.  Do you

6    anticipate having some or all testimony in person or is this

7    going to be a Zoom proceeding?

8          THE COURT:  Everything is going to be in person.

9    This is an exceptionally important case.  I think everybody

10   would agree with that.  It's also highly factually intensive.

11   And it is important especially with the experts that we can all

12   understand what everybody is talking about and I do not think

13   Zoom functions well for that, so everybody is going to be in

14   person.  I'm not going to talk about anybody else, but for

15   myself, I will say I am triple vaxxed, I intend to wear a mask

16   except for when I am speaking, and I would assume everybody is

17   going to be cautious in that regard as well.

18         MR. SELLS:  Judge, just one follow-up on that.  This

19   is Bryan Sells.  We'll make that happen.  But we do have two

20   members of our legal team who cannot travel because of medical

21   reasons, and so we would ask for the Court's indulgence and

22   permission to have them be able to observe and potentially

23   participate by Zoom.

24         THE COURT:  So observing is no problem at all.  I'm

25   perfectly comfortable with that.  When you say participating, I

1    need a little bit more detail.  If we are talking about the

2    person who is going to sort of do the principal legal arguing

3    or we're talking about the person who is going to question the

4    expert witnesses, I may have some concerns with that, but

5    before I jump the gun, let me ask you what you mean by

6    participating.

7              MR. SULLIVAN:  Well, I'm going to be the principal

8    person for the plaintiffs and I'll be in your courtroom.  But

9    we, as you would expect, probably intend to spread the load a

10   bit so that I'm not handling everyone.  And we don't know yet

11   at this point who the defendants intend to call so it's a

12   little hard for us to say whether these two individuals that I

13   am aware of will have witnesses or not.  But they are important

14   members of our team, so it's possible that they might have a

15   witness or perhaps more than one to examine.

16             THE COURT:  I will tell you that you all have on

17   this call one, two, three, four, five, six, seven attorneys,

18   and I think there are two other attorneys you all have on your

19   side who have entered appearances who are not here today which,

20   of course, is perfectly fine.  It strikes me that if two

21   members of your team can't travel, there are plenty of people

22   for you to have if someone is going to question a witness.  I

23   will tell you, I am okay if someone is questioning one of the

24   lay witnesses that one of the parties call, but if we are going

25   to get into the weeds, and I imagine we are, on expert

1    witnesses, I really would rather people here.

2          I guess I will say there's one exception.  I would be

3    comfortable if you told me if it was really important for the

4    person who is questioning Dr. Jay Barth to appear by video.

5    I'm less concerned about the testimony of Dr. Barth, which is

6    obviously less mathematical and less scientific, than I am

7    about the other two experts.  When I say concerned, I don't

8    mean concerned with the merits of it, I mean with making sure I

9    understand everything that the witnesses are trying to tell me.

10   And so with Dr. Barth as an exception, if someone wants to

11   question him over Zoom, he'll be here in person I'm assuming,

12   but if the questioner wants to be over Zoom, I'm okay with

13   that, but in terms of the mathematical experts, the map

14   experts, that kind of thing, I want both the witnesses and the

15   lawyers doing the questioning here in front of me.

16          MR. SELLS:  Judge, again, this is Bryan Sells.  I

17   think I understand your position and we'll try to work within

18   the Court's wishes there.  If that bumps up against any of our

19   must-have scheduling or assignment of tasks, we'll come back to

20   the Court at that point, but at this point I think we can work

21   within that.

22          THE COURT:  Other questions, Mr. Sells?  And it's

23   Mr. Sells, right?

24          MR. SELLS:  Correct, Your Honor.  I don't have a

25   question for you.  Well, I guess I do, it's kind of a question,

1    kind of an answer.  You asked how long will this trial take.

2    And that, of course, depends on a number of factors.  I don't

3    need to tell you that.  I think if we take witnesses with the

4    normal procedure, it could well last into the weekend or

5    Monday.

6         I think there are options for expediting testimony that I

7    want to throw out there.  You may not like any of them, and

8    that's fine, but I've been in other proceedings of this nature

9    in the last cycle where experts were put up on direct for a

10   very brief time and then their reports were treated as their

11   direct testimony so that compresses their time on the stand,

12   and then they're subject to cross and redirect live.  If the

13   Court was willing to entertain something like that, I think we

14   could get by in much less time.  So I guess that's my question.

15            THE COURT:  Mr. Sells, let me tell you my -- again,

16   concern is probably the wrong word, but let me tell you why I'm

17   a little hesitant to do that.  I actually think doing that

18   might in some way concern you all because, as you know, there

19   are lots and lots of mathematic formulas to go through.  There

20   are lots and lots of questions about, you know, black voting

21   age population versus black citizen voting age population,

22   that's just an example.  There are lots of questions about, for

23   example, you know, what does the .5 effectiveness rating mean,

24   what does .5 mean versus .6 versus .4, and what does

25   effectiveness mean.

1          And, again, I'm just raising these by way of example

2    because I happen to have them in my head from the reading I've

3    been doing today.  They're certainly not exhaustive, and they

4    may not even be great examples, but my point is I don't think

5    the expert reports are entirely clear on their own.  That may

6    not be true of some of them.  Again, Dr. Barth's expert report

7    is less scientific and mathematical and so I think Dr. Barth

8    might be a good candidate for something like that.  But the

9    other ones, I think it probably behooves you to want to present

10   them orally in person where you can sort of have good

11   visualized maps and everything else.  But, again, that's sort

12   of just my thoughts.

13          If you and the defendants want to reach some type of

14   agreement and then jointly bring that agreement to me in how

15   you want to proceed in a way that you think will streamline

16   things, I'm perfectly fine doing that.  I will tell you that my

17   experience in private practice has colored me a little bit

18   against streamlining proceedings like this and has suggested

19   that a more robust preliminary injunction hearing is important

20   if I'm going to take a significant step like enjoining a state

21   act or, here, a state map.  I really want to make sure that I

22   have aired all the issues and I fully understand them.  So

23   anyway, that's a long way of saying that I think I would prefer

24   sort of a real direct or real cross and a real redirect, but if

25   you and the defense get together and can jointly agree on

1    something else, I will certainly consider it.

2              MR. SELLS:  Thank you, Your Honor.  I understand

3    that as well.

4              THE COURT:  Plaintiffs, any other sort of clarifying

5    questions?  And I appreciated that sort of question slash

6    answer in terms of the preliminary injunction hearing.  If

7    there aren't, I'm going to go over to the defendant and then I

8    will come back to you all to talk about anything else you'd

9    like to raise as long as it's of a suitably administrative

10   nature.

11             MR. SELLS:  I feel like I'm hogging the floor, but

12   since you asked also regarding scheduling of the trial --

13             THE COURT:  Mr. Sells, I don't mean to interrupt

14   you, although I'm going to.  And I don't think you are

15   intentionally doing this for any reason, but I will say, and

16   maybe I'm jumping the gun, that's the second time you've

17   mentioned the word "trial".  I obviously want to make clear

18   that this is just a preliminary injunction hearing.  This is

19   not the trial.  If you all later make a motion to convert this

20   in some way into the merits, I'll obviously give that it's due

21   and I'll deal with it.  I will just tell you, I am thinking

22   about the preliminary injunction hearing and the trial very

23   separately.

24             MR. SELLS:  Thank you for that correction.  I was

25   using the term "trial" synonymously with PI hearing.  I'll try

1    to keep it to hearing going forward.  As the scheduling of the

2    PI hearing, it's my understanding that the trial in

3    Mr. Steinberg's other matter, the concerned -- I think it's the

4    concerned black clergy case, has been postponed.  And I just

5    want to throw out there that that might raise the possibility

6    of restoring the Court's initial schedule, which, therefore,

7    might eliminate the need to hold court on the weekend and

8    possibly over the weekend till Monday if the Court wanted to

9    make that adjustment.

10           THE COURT:  I'll obviously let Mr. Steinberg talk

11   about that in a second.  But, Mr. Sells, this may be a good

12   time and, again, I don't want to get too far in the substance

13   here, but this may be a good time for me to ask you:  I

14   understand, of course, your interest in resolving this quickly

15   and I think it's a significant interest.  Is there a particular

16   drop dead date beyond which I really wouldn't have the ability

17   to enter the type of preliminary relief you want?  And I'm

18   asking this because I'm trying to get my hands around let's

19   assume for a second -- and, of course, this is all assuming

20   arguendo, but let's assume for a second that ultimately I

21   concluded that the maps were a -- the map was a violation of

22   section 2 and it needed to be redrawn in some way.  I'm trying

23   to figure out within the context of giving the chance -- giving

24   the state the first chance to do that, without sort of screwing

25   up too much else about the election deadlines, do you have a

1    sense of when the drop dead date I can do that is?

2              MR. SELLS:  No, Your Honor.  I think the question is

3    better framed as what's the drop dead date I can do that

4    without disrupting other parts of the state's election

5    calendar.  Because as we've seen in other states around the

6    country in similar litigation, courts have on occasion adjusted

7    say, for example, qualifying dates.  We, as plaintiffs, want to

8    minimize that as much as possible.  So I think the question is

9    what's the drop dead date to avoid kind of bumping up there.

10             THE COURT:  You have rephrased my question in a far

11   better way than I asked it.  That is exactly the question I

12   meant to ask.

13             MR. SELLS:  And I think everyone on this call has an

14   interest in resolving the PI motion in that fashion, but I

15   don't see it as a drop dead because the Court certainly has the

16   power to make those adjustments.  I think we identified a drop

17   dead date in our pleadings, but I don't have that in front of

18   me.  I think the qualifying ends in March.

19             THE COURT:  I hear you there.  I guess my point --

20   my question, and quite frankly, maybe my question is better

21   lodged at the defendants, but I think what I'm trying to figure

22   out is let's assume on February 2 or February 3, I told the

23   state they had to go back and come up with a different plan.

24   I'm not sure at this point that I have my hands well enough

25   around how long it would take them to do it, meaning is there

1    some requirement for another comment period or some other

2    requirement that means sort of without screwing those things

3    up, I have to give them another 20 days or something like that,

4    and so I'm just trying to figure out -- here's what I'm really

5    trying to figure out.

6         I'm trying to figure out how strong your interest is in

7    having me decide this before let's say February 2nd or February

8    3rd, because if you told me by February 2nd or February 3rd, it

9    would be too late, then maybe there's a real reason to have the

10   discussion about kicking forward the hearing schedule.

11        MR. SELLS:  Well, I guess we don't have a firm

12   position on that.  I think the defendants are more likely to

13   come up with a schedule, and hopefully that schedule is

14   sometime in the future, but I think that's likely to be a

15   question we might disagree with the State on.

16        THE COURT:  Fair enough.  I appreciate you bringing

17   the scheduling point to the Court's attention.  When I talk to

18   Mr. Steinberg, I will raise that with him and then I will

19   circle back with you on that.  Anything else from the

20   plaintiffs' side on the sort of clarification of the

21   preliminary injunction hearing questions?

22        MR. SELLS:  I think that's all for now and I'll let

23   Mr. Steinberg assume the hot seat.

24        THE COURT:  I appreciate it, Mr. Sells.  That was

25   very helpful to me.  Mr. Steinberg, before we get into anything

1   else, why don't we start with the point Mr. Sells ended with,

2   which is whether or not we should push up the hearing somewhat

3   and, of course, that would probably entail pushing up the

4   briefing schedule a little bit to get to a couple days earlier

5   in the week so we could avoid weekend work and we could finish

6   earlier which, of course, has important implications for

7   ensuring that I make a decision in a timely manner.

8          MR. STEINBERG:  So Mr. Sells is right, that trial's

9   been continued.  That said, I don't think that we're in a

10  position to file a response materially sooner than the existing

11  response deadline, and I'm not sure that there is any deadline

12  in Arkansas election law that really forces a decision to be

13  made, certainly not sooner than February 2nd.  The filing

14  period, which as Mr. Sells noted, you would have the power to

15  modify if necessary to accommodate a change in the districting

16  map.

17         THE COURT:  Mr. Steinberg, let me interrupt you

18  there for a second.  And if you can't make a commitment one way

19  or the other today, I certainly understand that.  I called this

20  hearing just to sort of talk about administrative stuff.  But I

21  do want to make sure, I think I heard you say that you agree

22  that I have the power to essentially move or tweak the filing

23  deadline.  I want to make sure, is that the position of the

24  defendants, that I can do that if I need to?

25         MR. STEINBERG:  That is our position, yes.  Now,

1    it's possible that we could discover that I'm mistaken in that.

2            THE COURT:  Hold on a second, Mr. Steinberg.  If

3    you're telling me I can do it now and I'm going to rely on that

4    to not move the schedule, then you're taking a considered

5    position and I'm going to hold you to it.  So that's why I was

6    asking.

7            MR. STEINBERG:  I understand.  That is our position,

8    that, if necessary, that period could be moved for state house

9    races.

10           THE COURT:  I appreciate your answer there,

11   Mr. Steinberg.  I think I have the lay of the land.  Do you

12   have questions, clarification questions regarding the

13   preliminary injunction hearing, either anything I said or

14   anything else you want to ask about the PI hearing?

15           MR. STEINBERG:  My only question is do you

16   anticipate some extended period for oral argument and is that

17   going to take the form of an opening or a summation after

18   testimony has occurred?

19           THE COURT:  That is a very good question.  The first

20   answer is yes, I anticipate significant legal arguments.  I

21   will have a lot of questions.  Some I am sure good, some I am

22   sure bad.  Some I am sure relevant, some I am sure will perhaps

23   be less relevant, but I'm going to have a lot of questions

24   here.  This is the first voting rights case I have dealt with

25   since coming on the bench.  And I have spent a lot of time over

1   the last week really bearing down on the law and precedents in

2   this area, and I think it is fair to say that both given the

3   law and given so far what I've seen from the plaintiffs, I have

4   lots of questions for them, but I also have lots of questions

5   for you.

6        So the answer to your first question is yes, definitely a

7   lot of legal argument.  In terms of the form of that, that's a

8   really good question.  I am going to leave to each side to

9   decide whether they want to do an opening statement or not.  In

10  terms of a closing statement, I think the closing statement

11  will essentially be the legal argument period.  I will say just

12  from what I have done of these before in my professional

13  career, I don't really know that I need an opening statement.

14  I mean, in some sense, your briefs and the expert reports are

15  really the opening statement, but if you all think that an

16  opening statement is useful to in some sense preview the

17  evidence or order my mind to it, I'm not going to tell you all

18  not to do it.

19       Everyone here are serious professionals and I don't think

20  anybody has any interest in presenting things that are a waste

21  of time.  I trust that everybody has an interest in sort of

22  putting their best foot forward.  So I'm going to leave it to

23  you all to decide whether you want to do an opening.  And the

24  closing portion will basically be the legal argument, and I

25  would assume it's going to be for an extended period of time.

1          MR. STEINBERG:  That's all.  I don't think that I

2     have any other questions.

3          THE COURT:  Okay.  Given that I'm going to go back

4     to the plaintiffs anyway, Mr. Steinberg, before I do that, do

5     you have anything else you'd like to raise, again, in an

6     administrative nature, not substantive?

7          MR. STEINBERG:  Nothing else to raise of an

8     administrative nature.

9          THE COURT:  Okay.  Mr. Sells -- when I say

10    Mr. Sells, I obviously mean all the plaintiffs if other counsel

11    want to talk, they can do so as well, but Mr. Sells, we were

12    having the conversation.  I appreciate you bringing the

13    scheduling change in the other case to the Court's attention.

14    I'm going to keep the schedule we have.  I think it makes sense

15    from the perspective of the parties and fairly balances things.

16    I also think it makes sense given the Court's other commitments

17    in the next period.  So I'm going to leave the schedule as is.

18    I did obviously say that I am going to give you all a chance if

19    you want to bring up other administrative issues other than the

20    PI hearing, you're more than welcome to do so now.

21         MR. SELLS:  Thank you, Your Honor.  I think we have

22    one administrative issue right now and that's regarding your

23    order of yesterday regarding the plaintiff declarations.  We

24    have been working hard since that order came out to get that

25    information and we've been working furiously this morning as

1    well, and we don't yet have any degree of confidence that we're
2    going to be able to get that by Friday.  There's some
3    logistical issues in obtaining the membership lists for both of
4    the plaintiff organizations.  The NAACP, for example, doesn't
5    keep a centralized list here in Arkansas so we have to go to
6    Baltimore to get it and we don't know how long the turnaround
7    time is in Baltimore and so on.
8          THE COURT:  Mr. Sells, I'll be happy to think about
9    an extension, but I do have a question here.  You all in your
10   complaint, and I'm not going to quote the language, I don't
11   have it in front of me, but I basically quoted it in my order
12   of yesterday.  You all, in your complaint, alleged that you had
13   members in the affected areas.  So I'm assuming you all had the
14   membership lists to figure that out.  I'm not sure I understand
15   why you need more time.  I'm assuming you wouldn't have said
16   that if you hadn't seen that already.
17         MR. SELLS:  Your Honor, the complaints are not
18   verified, they're not under penalty of perjury, they're based
19   on a reasonable investigation.  Yes, we conducted that
20   reasonable investigation with both of our clients, we pointed
21   out to them where we have alleged that the discrimination is
22   occurring and confirmed with them that they have members in
23   those areas.  And you have asked for a declaration under
24   penalty of perjury, which I consider to be a higher standard,
25   so we want to put a little finer point on it.  And, of course,

```
 1   the member lists aren't kept by -- they're not ordered by house
 2   discretion, so there's a little bit more work that needs to be
 3   done to get the answer that you're asking our clients to swear
 4   to under the penalty of perjury.
 5              THE COURT:  How much longer would you need?  And the
 6   reason I'm asking you is it may be -- Mr. Steinberg obviously
 7   in his response has a right to respond to whatever you all say,
 8   and so I was trying to give you as much time as I could with
 9   leaving him a little bit of time to respond or change his
10   response if he needed to based on what you all said.  Because
11   obviously I want the input on that question from both parties.
12   When do you think you can get it done by?
13              MR. SELLS:  I don't have an answer for that.  We've
14   been pressing our clients really hard this morning, in fact, to
15   get an answer and we just don't have one and it's because of
16   the things that I mentioned like it's just not just our clients
17   who are involved, but client parent organizations and so on.
18   We had planned to put the plaintiffs on, the organizational
19   representatives on at the hearing to provide that testimony.
20   So this is in substantial advance of when we thought we were
21   going to have to provide that.  I'm hoping it's only a matter
22   of a couple of days, but at this point, I don't have that
23   visibility, Your Honor, so I don't want to tell you something
24   that turns out not to be true.
25              THE COURT:  Here's what I would like then.  By the
```

1   date that I have required, I would like an email to the Court

2   that copies the defendants that at the very least identifies

3   specifically each district you are claiming is packed or

4   cracked.  And then I will -- you need to tell me how much more

5   time you need to tell me whether or not there is a member of

6   each plaintiff organization who lives -- you know the order,

7   I'm not going to repeat the order, and the order controls, but

8   I definitely want to know by the deadline I've set which

9   specific districts you are claiming are packed and cracked.

10  And then if you need some more time to be able to file the

11  declaration, that's fine, but you also need to understand if

12  that's true, I may very well give the defendants a sur-reply

13  because if the declaration you're filing comes after their

14  response period, I want them to have a right to explain this

15  from their perspective in the same way that I want you all to

16  have a right to explain it from your perspective.

17          So, again, by the deadline I did give, and this will in

18  some sense amend the schedule of the order, by the deadline I

19  did give, I want at least to know through email which are the

20  specific districts that you all are claiming are packed and

21  cracked, packed or cracked, and then on that date, I want to

22  know when is the very earliest you can get me a membership

23  list.  Not a full membership list, when you can get me the

24  declaration that for each district you've identified then goes

25  through district by district and says whether -- for each

1  plaintiff, whether there's a member of that plaintiff

2  organization in the district.  Fair enough, Mr. Sells?

3          MR. SELLS:  That seems reasonable to me, Your Honor.

4  The list of challenged districts here is not the hard part

5  here.  It's obtaining the member lists.  And I think it's

6  reasonable to expect we'll have some greater visibility by

7  Friday.

8          THE COURT:  Mr. Steinberg, do you have any objection

9  to that?  I'm sure it's not your favorite situation, but that

10  tentatively seems fair to me.  Do you have some objection to

11  it?

12          MR. STEINBERG:  My understanding is that if they are

13  not able to file the declarations by the date of our response,

14  you would allow a sur-reply limited to the questions that this

15  goes to, I suppose standing.  Is that correct?

16          THE COURT:  Yes, but only on that limited issue.

17  I'm generally not a fan of sur-replies.

18          MR. STEINBERG:  No, I have no objection to that.

19          THE COURT:  Okay.  Then that is the way we will

20  proceed and I will just state for the record that that new

21  schedule essentially amends the order that I put out on Monday.

22  Mr. Sells, anything else?

23          MR. SELLS:  Yes, Your Honor.  This goes back to the

24  trial, excuse me, the hearing, that I thought of in the interim

25  and that goes to documentary evidence.  We expect to have some

1    small number of documents and we will endeavor to reach

2    stipulations with the defendants regarding their admissibility.

3    But does the Court have any preferences regarding foundational

4    witnesses or anything regarding documentary evidence that we

5    should be aware of now so we can plan for that?

6                THE COURT:  I am looking over at Heather.  Mr. Sells

7    asks a good question about preferences on foundational

8    witnesses and things like that for documents.  He's essentially

9    asking about admission of documents, and I want to answer him

10   in two ways.  One is logistically and one is perhaps a little

11   bit more substantively, although I'm afraid I'm not going to

12   give him an answer he wants to hear.  Logistically, and this is

13   where I'm looking for you to shake your head one way or the

14   other.  Logistically, I believe we have a general order or at

15   least we have what we usually send out as how many copies of

16   exhibits we want and need.  Is that somewhere that is either

17   accessible to Mr. Sells or that we can send to Mr. Sells and

18   obviously the rest of the plaintiffs' counsel and the rest of

19   the defendants' counsel?

20               THE COURTROOM DEPUTY:  Sure.  Yes, normally I send a

21   trial checklist, but I can send it as a hearing checklist.  And

22   it indicates how many copies we need of exhibits and binders

23   and witness lists and due date for those items.

24               THE COURT:  And in terms of the due date, this is

25   all a very compressed schedule, so I really just want things

1  the day before, you know.  If something's supposed to be five

2  days before, let's just make it one day before because we all

3  have a very compressed timeline here.

4       Mr. Sells, I know your question was probably a little

5  more substantive in nature.  Here's what I will say.  Given the

6  extraordinary import of this case to the public, both our

7  citizens and the state, I want to treat this very by the book.

8  So if you all can't come to agreements on the admission of

9  evidence, we're going to go forward as one normally would in a

10 PI hearing.  I will leave it to you all to determine and argue

11 to me one way or the other whether the rules of evidence apply

12 in a hearing like this, whether they don't.  I know what I

13 think, but I'm not going to prejudge that issue.

14      I would essentially treat this as about as formalistic a

15 forum as you can, and whatever the law says, I'm going to

16 follow.  That's probably not a clear enough answer, but that's

17 the best answer I have for you.  Mr. Sells, I couldn't hear

18 you.

19           MR. SELLS:  Sorry, Judge.  I was talking over

20 somebody.  I said thank you, that's helpful.  That clarifies

21 things for us.

22           THE COURT:  Anything else, Mr. Sells, or anybody

23 else on the plaintiffs' side?  Mr. Steinberg, anything else?

24           MR. STEINBERG:  No, nothing else.

25           THE COURT:  We are adjourned.  Thank you all very

1    much.

2        (Proceedings adjourned at 2:01 PM.)

3                REPORTER'S CERTIFICATE

4      I certify that the foregoing is a correct transcript of

5    proceedings in the above-entitled matter.

6    /s/ Karen Dellinger, RMR, CRR, CCR

       ----------------------------------       Date: January 13, 2022

7    United States Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25