IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THE ARKANSAS STATE CONFERENCE NAACP, *et al.*,   PLAINTIFFS,

v.   Case No. 4:21-cv-01239-LPR

THE ARKANSAS BOARD OF APPORTIONMENT, *et al.*   DEFENDANTS.

REPLY IN SUPPORT OF MOTION TO QUASH CONSTITUTIONAL-OFFICER SUBPOENAS

Plaintiffs wish to call the State's highest-level officers to the witness stand in order to elicit irrelevant testimony that is barred by privilege. At this point, these officials will have less than a week's notice as to if and when they would be expected to testify. This case is not about their motivations or justifications in adopting the House district maps. Ultimately, whatever political points Plaintiffs might score by hauling Arkansas's constitutional officers to the witness stand, they don't really dispute that the testimony they seek will have little to no real bearing on this Court's preliminary-injunction decision. This Court should quash the subpoenas.

ARGUMENT

I.   **The constitutional officers' testimony is not relevant to Plaintiffs' claims and is especially not warranted at this stage of the proceedings.**

Plaintiffs do not claim that the Board members engaged in unlawful intentional discrimination in drawing Arkansas's House districts, such that their reason for casting their vote in favor of the plan would be relevant. Nor do they claim that the Board members' testimony would be relevant as to the central elements of a Section 2 claim, the three *Gingles* preconditions. Instead, they claim that the Board members' testimony is potentially relevant to an optional Senate Factor, which considers the tenuousness of the "policy underlying the state['s]" adoption of the House district maps. Resp. at 2.

For the reasons explained in Defendants' opening brief, the Board members' testimony is not relevant. Br. at 2-3. Nor have Defendants conceded that it is. As explained in Defendants' response to Plaintiffs' motion for recusal, the "justification for the plan is a potentially relevant factor in this case." DE 38 at ¶ 6. Those "criteria and goals" that the Board staff settled on are publicly available. *See* Davis Decl., DE 53-1 at ¶ 4 & n.2. But as Defendants also explained, "the subjective purposes motivating the plan"—*i.e.*, the only evidence to which the Board members could uniquely testify—"are not . . . at issue here." DE 38 at ¶ 6. All three cases cited by Plaintiffs on this point appear to have involved discriminatory intent claims. *See* Compl., DE 1, at 8 ¶ 16, *Wright v. Sumter Cnty. Bd. of Elections and Registration*, Case No. 1:14-cv-00042-WLS (M.D. Ga. Mar. 7, 2014) (alleging that the "proposed plan is discriminatory and racially motivated"); *Jeffers v. Beebe*, 895 F. Supp. 2d 920, 928 (E.D. Ark. 2012) (noting that the plaintiffs "allege[d] . . . intentional discrimination"); *Jeffers v. Clinton*, 730 F. Supp. 196, 210 (E.D. Ark. 1989) ("[T]he defendants vigorously defended against allegations that they intentionally or purposely discriminated against blacks in formulating and implementing the 1981 redistricting plan."). This case does not involve any such allegation.

To the extent Plaintiffs may wish to probe policy choices that were made regarding individual mapping decisions, such testimony can be obtained from Board staff involved in those decisions. *See* Davis Decl. at ¶ 7. The subjective beliefs of the Board members who ultimately voted on the proposed maps prepared by their staff are of no moment.

Further, even if the Board members' testimony could potentially be of passing relevance to their Section 2 claim, Plaintiffs remain free (subject to objection) to seek to depose them at a later point in this case. Plaintiffs do not contest that the Board members are "apex" witnesses. And as Plaintiffs concede, trial subpoenas have been issued to several Board staff members,

Resp. at 10, in addition to any witnesses Defendants may call. The apex witness rule requires that Plaintiffs exhaust these avenues for testimony before encroaching on the responsibilities of high-level government officials, and Plaintiffs find this approach "acceptable." *Id.* But any testimony by the Board members ought to take place at a later date, if at all, when depositions can be scheduled in advance, not at a (now rescheduled) hearing taking place on extremely short notice with no established timeframe for the Board members' testimony.[1] The subpoenas for the upcoming hearing should be quashed.

## II. Testimony as to the subjective motivations of the Board members in adopting the House district maps is barred by privilege.

Common-law privilege bars inquiry into the state of mind of the Board members. Requiring their presence at the upcoming hearing would thus be fruitless, and the subpoenas should be quashed.

### A. The Board members are entitled to legislative privilege.

Plaintiffs first argue that the Board members "are not legislators" and are thus not entitled to legislative privilege for the legislative task of approving legislative districts. Resp. at 4. However, the Supreme Court has long described its approach to questions of immunity (of which privilege is a lesser variant) as "functional." *Forrester v. White*, 484 U.S. 219, 224 (1988). That approach counsels courts to "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and . . . to evaluate the effect that exposure to

---

[1] Defendants plan to advise the Court regarding the Board members' availability during Thursday's telephone hearing.

Plaintiffs point out in a footnote that the Board members have not submitted any declarations regarding their schedule. Resp. at 10 n.1. In the experience of undersigned counsel, matters of scheduling and availability are typically handled by representations made by counsel as officers of the Court. Should the Court instead require such representations to be supported by sworn declarations, Defendants would expect that requirement to run both ways.

3

particular forms of liability would likely have on the appropriate exercise of those functions." *Id.*  The Supreme Court has applied this approach to conclude that the Virginia Supreme Court "exercise[d] the State's entire legislative power with respect to regulating the Bar," and held that that court's members were "legislators for the purpose of issuing the Bar Code" and were thus "immune from suit when acting in their legislative capacity."  *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980).  Legislative privilege is thus not limited to officials within the legislative branch of the State's government.  *See Am. Trucking Associations, Inc. v. Alviti*, 496 F. Supp. 3d 699, 711 (D.R.I. 2020) ("Despite being called a 'legislative' privilege, this protection can apply to the Governor.").

Contrary to Plaintiffs' contention, the involvement of the legislature is not central to whether an executive official is engaging in legislative activity.  For example, in *Marylanders for Fair Representation, Inc. v. Schaefer*, the district court examined three elements in determining whether an action by an official is entitled to legislative immunity: "(1) the actor, who must be a government official or an individual working on his behalf; (2) the act itself, which must fall within the sphere of legitimate legislative activity; and (3) the act's proximity to the legislative arena."  *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 299 (D. Md. 1992) (three-judge court).  The court reviewed actions previous cases had determined fell within the legislative sphere, including "committee reports, resolutions, and the act of voting," and other actions "involving policy-making rather than mere administrative applications of existing polices" such as budgetmaking.  *Id.* at 300 (internal quotations and citations omitted).  It further noted that the "*sui generis* nature of redistricting legislation" distinguished the Governor's executive role from his role in the redistricting process.  *Id*. at 301.  And it ultimately held that the Governor had legislative immunity merely because he proposed a redistricting plan, and that the

4

Governor's redistricting *advisors* had derivative legislative immunity for advising him on that plan. *Id.* at 300-01.

That the Board ultimately votes on the plan itself, in lieu of submitting the maps to the General Assembly for a vote, does not make its actions any less legislative in nature. Arkansas's Constitution provides for elected executive officials to engage in this legislative function instead of members of the General Assembly, unlike most other states. But it is the function—not the officers engaging in it—that determines whether privilege applies.

The Board members are entitled to privilege for testimony regarding their subjective motivations in adopting the House district maps. Unlike their argument as to the deliberative-process privilege, Plaintiffs do not argue that their intended questioning falls outside the scope of the legislative privilege. Courts generally assess the following five factors in assessing whether legislative privilege should apply: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y.) (magistrate's order), *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003).

As explained above and in Defendants' opening brief, the irrelevance of the Board members' testimony weighs against disclosure. Other evidence that is potentially relevant, such as testimony by Board employees who made the day-to-day decisions regarding various mapmaking decisions, is available.[2]

---

[2] As noted in the opening brief, the third and fourth factors generally always favor disclosure in redistricting cases. Br. at 5.

Courts generally find the fifth factor to weigh against disclosure, even though redistricting takes place once per decade. *See Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 341 (E.D. Va. 2015) ("The legislative independence interest likewise weighs against disclosure."); *Favors v. Cuomo*, 285 F.R.D. 187, 220 (E.D.N.Y. 2012) "(Fifth and finally, although allowing discovery here may not create a specific legislative chill in future redistricting cases in New York, it may inhibit full and frank deliberations in analogous legislative activity."); *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *8 (N.D. Ill. Oct. 12, 2011) ("Finally, the need to encourage frank and honest discussion among lawmakers favors nondisclosure.").

Plaintiffs claim that the testimony they seek from the Board members concerns the "policy underlying the plan" rather than the Board members' "*preliminary* opinions and considerations." Br. at 6 (quotation omitted). But any inquiry into the "policy" underlying the adoption of the House district maps necessarily asks why certain decisions were made and not others. The Board's criteria and goals for redistricting were publicly announced. Plaintiffs do not claim that they simply wish to ask each Board member whether those policies were, in fact, what the Board member considered when voting to approve the map. Rather, it is clear they wish to question the Board members about the policy choices that were made, which will necessarily intrude into the pre-decisional considerations that went into the final proposed maps. Such questioning falls squarely within the "legislative work product and confidential deliberations," protected by the privilege." *Favors*, 285 F.R.D. at 210.

## B. The Board members are alternatively entitled to the deliberative-process privilege.

As explained in Defendants' opening brief, courts generally examine the same five-factor test when determining whether officials are entitled to the deliberative-process privilege. Plaintiffs do not contest this point, but argue that the scope of the privilege doesn't include the testimony they which to elicit.

As explained above, any inquiry that would amount to questioning the subjective motivations of the Board members for voting to adopt the House district maps would be irrelevant. Plaintiffs claim that they wish to question the "board members' justification for the *actual* policy," rather than "the board members' preliminary or draft thoughts." Resp. at 8. But as explained above, justifications for the "actual" policy are a necessarily comparative exercise with the policies that could have been. Plaintiffs' claim that the maps approved by the Board violate Section 2 is itself a comparative exercise; they claim the Board could have created more majority-minority districts than it did, and its failure to do so violated the VRA. Probing the motivations of the Board members as to their justifications for the plan necessarily involves whether those justifications were served better by other options the Board could have considered instead. That is certainly "related to the process by which [the decision adopting the House district maps] was formulated." *New York v. Dep't of Com.*, No. 18-CV-2921 (JMF), 2018 WL 4853891, at *1 (S.D.N.Y. Oct. 5, 2018).

Thus, Plaintiffs' proposed questioning is either irrelevant or intrudes upon the deliberative process so as to qualify for the privilege.

**CONCLUSION**

The Court should grant this Motion and quash the subpoenas directed to the Governor, Attorney General, and Secretary of State.

                                                                Respectfully submitted,

                                                                LESLIE RUTLEDGE
                                                                Arkansas Attorney General

                                                                Nicholas J. Bronni (2016097)
                                                                 Solicitor General
                                                                Asher L. Steinberg (2019058)
                                                                Dylan L. Jacobs (2016167)
                                                                 Assistant Solicitors General
                                                               Jennifer L. Merritt (2002148)
                                                                Senior Assistant Attorney General

                                                               OFFICE OF THE ARKANSAS
                                                                 ATTORNEY GENERAL
                                                                323 Center Street, Suite 200
                                                                Little Rock, Arkansas 72201
                                                                Tel: (501) 682-2007
                                                                Fax: (501) 682-2591