UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No: 22-1395

Arkansas State Conference NAACP and Arkansas Public Policy Panel

Appellants

v.

Arkansas Board of Apportionment, et al.

Appellees

------------------------------

United States of America, et al.

Amici on Behalf of Appellant(s)

Honest Elections Project, et al.

Amici on Behalf of Appellee(s)

_____

Appeal from U.S. District Court for the Eastern District of Arkansas - Central
(4:21-cv-01239-LPR)
_____

### ORDER

The petition for rehearing *en banc* is denied.  The petition for panel rehearing is also denied.

Chief Judge Smith, Judge Colloton and Judge Kelly would grant the petition for rehearing *en banc*.

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Jan 30, 2024
Tammy H. Downs, Clerk
By: JohnHibbs D.C.
DEP CLERK

Judge Shepherd did not participate in the decision or consideration of this matter.

STRAS, Circuit Judge, with whom GRUENDER, Circuit Judge, joins, concurring in the denial of rehearing en banc.

The panel opinion mostly speaks for itself, except for two new arguments. One is the plaintiffs' shift in focus to a § 1983 action and the other a hardline stance on the cross-appeal requirement that *no one* has brought up before now. Neither was before the panel.

I.

All along, the plaintiffs have focused on whether the *Voting Rights Act* contains a private right of action under § 2. The possibility of enforcing § 2 through some other statute appears to have been an afterthought, even though other § 2 plaintiffs have invoked § 1983 from the start, beginning with their complaints. *See, e.g.*, Compl. at 75, 79, 81–83, *N.C. State Conf. of the NAACP v. Berger*, No. 1:23-cv-01104-WO-LPA (M.D.N.C. filed Dec. 19, 2023), 2023 WL 8812633; Compl. at 34, 38–39, *Winnebago Tribe of Neb. v. Thurston County*, No. 8:23-cv-0020-RFR-JMD (D. Neb. filed Jan. 19, 2023), 2023 WL 362295; Compl. at 51, *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. filed Mar. 30, 2022); Compl. at 1, *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-cv-00022-PDW-ARS (D.N.D. filed Feb. 7, 2022).

Here, by contrast, the plaintiffs did *not* plead a § 1983 claim, brief it below, or request leave to add it, even after being "put . . . on notice of the possible deficienc[y] in their original complaint." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 963, 964 n.3 (8th Cir. 2015) (noting that "whether to request leave to amend or stand on the complaint" is "an ordinary tactical decision," and plaintiffs are not entitled to a do-over if it turns out badly); *see also GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1036–37 (8th Cir. 2022) (explaining that plaintiffs seeking

a without-prejudice dismissal must "show a willingness to amend the complaint" in a way that would "save the meritless claim" (citations omitted)). It is true that the district court raised the private-right-of-action issue on its own, but it still had no obligation to address a claim the plaintiffs never pleaded.

It was a similar story on appeal. The first time the plaintiffs mentioned § 1983 was in a footnote in their opening brief. It recited the general rule that statutes creating private rights are enforceable under § 1983, along with a one-sentence description of two exceptions to that rule, including one that applies when Congress has "creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement." Appellants Br. at 29 n.16 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.4 (2002)). And critically, there was no argument that they had pleaded enough to preserve the issue or had raised it in some other way to the district court. Instead, the argument was that they were entitled to an amendment—one they had never requested—because the application of § 1983 is "a pure[] legal issue that [was] beyond doubt." *Id.* (quoting *Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022)).

It may well turn out that private plaintiffs can sue to enforce § 2 of the Voting Rights Act under § 1983. But without briefing on the issue, we could not say it was "beyond doubt." *Id.* And it would have been backwards to treat the plaintiffs' choice *not* to add a § 1983 claim as the reason to decide they could. *See Ash*, 799 F.3d at 964 n.3. So we did what we usually do—address the case the parties brought—and considered whether the *Voting Rights Act* allows for private enforcement of § 2. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("We wait for cases to come to us, and when they do we normally decide only questions presented by the parties." (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in the denial of rehearing en banc))). We concluded the answer to that specific question was "no."

II.

We also answered another question posed to us by the plaintiffs: did the district court make a mistake in treating the absence of a private right of action as a jurisdictional defect? It did, but then the plaintiffs wanted us to wind back the clock and start the case over again. We explained why, in the context of this case, their requested remedy did not work.

Instead, we modified the judgment to the usual disposition when the complaint does not state a claim and the plaintiffs have not tried to fix it: a dismissal with prejudice. The defendants did not cross-appeal, but they argued for "remand . . . with instructions to modify [the] judgment to a dismissal with prejudice." Appellees Br. at 55. The plaintiffs never argued in response that the absence of a cross-appeal ruled out this remedy. Not in their reply brief, not even in their petition for rehearing. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (explaining that if a court of appeals "notice[s]" an unraised issue, it "is not 'required' to raise [the issue] *sua sponte*" if it "is not a jurisdictional matter"); *United States v. Nunez-Hernandez*, 43 F.4th 857, 859 (8th Cir. 2022) ("Forfeiture occurs when a party has an argument available but fails to assert it on time."); *cf. Greenlaw*, 554 U.S. at 240, 243 (enforcing the cross-appeal requirement after it was raised in the petition for rehearing). The word "cross-appeal" never appears, not even once.

It has long been the law in this circuit that "the cross-appeal requirement is a non-jurisdictional rule of practice," meaning we have no obligation to raise it on our own. *Gross v. FBL Fin. Servs., Inc.*, 588 F.3d 614, 621 (8th Cir. 2009); *see also Greenlaw*, 554 U.S. at 245 (declining to overrule our precedent treating the rule as discretionary); *id.* at 256–57 (Alito, J., dissenting) (concluding that it is "a prime example of a rule of practice, subject to exceptions" (citation omitted)); *id.* at 255 (Breyer, J., concurring in the judgment) (agreeing with Justice Alito). It makes no difference that the disposition changed. Even without a cross-appeal, we have frequently reclassified a dismissal—from without prejudice to with prejudice—when the circumstances call for it, including when no one raises the issue. Here are just a few examples: *Persechini v. Callaway*, 651 F.3d 802, 808 (8th Cir. 2011); *Knutson*

*v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010); *Williams v. Schario*, 93 F.3d 527, 529 (8th Cir. 1996) (per curiam); *Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 311 (8th Cir. 1992); *see also Doyle v. TransUnion*, 638 F. App'x 559, 560 (8th Cir. 2016) (unpublished per curiam); *Hollowell v. Hosto*, 389 F. App'x 583, 584 (8th Cir. 2010) (unpublished per curiam); *Warren v. Fort Dodge Corr. Facility*, 372 F. App'x 685 (8th Cir. 2010) (unpublished per curiam); *cf. Core & Main, LP v. McCabe*, 62 F.4th 414, 417 n.1 (8th Cir. 2023) (making a dismissal "with prejudice" with the plaintiff's consent but no cross-appeal). And we are not the only ones who do it. *See, e.g.*, *Sherwood v. Marchiori*, 76 F.4th 688, 697 (7th Cir. 2023); *Clementine Co., LLC v. Adams*, 74 F.4th 77, 90 n.4 (2d Cir. 2023); *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1208 (11th Cir. 2012) (per curiam); *Marts v. Hines*, 117 F.3d 1504, 1506 (5th Cir. 1997) (en banc) (creating a "prudential" exception).

The reason is that appeals do not come in one-size-fits-all packaging. Here, it would have been strange to require the defendants to appeal the same issue the plaintiffs did. After all, the plaintiffs were the ones arguing that the district court should not have raised the private-right-of-action issue on its own because it was non-jurisdictional. They were right about the problem, but wrong about the solution. As the panel opinion explains, there was little to gain by ignoring the clear implication of their argument just because we did not have a second appeal from the defendants spelling out the consequences. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1217–18 (8th Cir. 2023) (explaining why "unwind[ing] everything" was the "wrong . . . solution").

### III.

The panel did the best it could with the case it had, one complicated by twists, turns, and shifting arguments, not to mention today's invitation to shadow box with arguments no one made. I, for one, have no doubt that the district judge, the panel, and this court have been "dispassionate arbiter[s] of [the] issues" actually "presented by the parties," even if reasonable minds might disagree about the right answer. *Post* at 14.

-5-

COLLOTON, Circuit Judge, with whom KELLY, Circuit Judge, joins, dissenting from denial of rehearing en banc.

The panel majority in this case rendered an ambitious and unprecedented ruling that an aggrieved voter does not have a private right of action under § 2 of the Voting Rights Act of 1965 to enforce the right to vote. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023). According to the panel, only the Attorney General of the United States may bring an action under the Act to enforce § 2. If that were the proper issue for decision on this appeal, then it would be a matter of exceptional importance that warrants rehearing by the court en banc. *See id.* at 1218-24 (Smith, C.J., dissenting). But the panel should not even have reached this issue of national significance. The district court erred by dismissing the action for lack of subject-matter jurisdiction, and the longstanding cross-appeal requirement precluded the panel from expanding the district court's erroneous judgment in favor of the non-appealing State defendants.

*

The panel's decision on the merits is flawed. A majority of the Supreme Court in *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), expressly relied on the availability of a private right of action under § 2 to conclude that § 10 of the Act is also privately enforceable. *Id.* at 230-34 (opinion of Stevens, J.); *id.* at 240 (Breyer, J., concurring in the judgment). The *Morse* majority, on its own terms, necessarily decided that § 2 is privately enforceable as an essential analytical step in its decision that § 10 is privately enforceable. The panel majority recognized that the *Morse* opinions "appear to create an open-and-shut case" that § 2 is privately enforceable, but declined to take "at face value" the statements of the Justices. 86 F.4th at 1215. Rather than apply the precedent straightforwardly, the panel opinion attributed illogical thinking to the *Morse* majority—as though the Justices reached a conclusion based on an explicit premise without realizing the need to decide that the premise was true. The panel majority's unusual notion of "dicta," and its refusal to treat *Morse* as controlling precedent for an inferior court, are worthy of further review. *Compare*

*id.* (panel opinion describing the *Morse* majority's rationale as "mere dicta at most"), *with* Frederick Schauer, *Precedent*, in *The Routledge Companion to Philosophy of Law* 123, 129 (Andrei Marmor ed. 2012) ("[T]he traditional answer to the question of what is a precedent is that subsequent cases falling within the *ratio decidendi*—or *rationale*—of the precedent case are controlled by that case."), Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1257 (2006) ("To identify dictum, it is useful to turn the questioned proposition around to assert its opposite, or to assert whatever alternative proposition the court rejected in its favor.  If the insertion of the rejected proposition into the court's reasoning, in place of the one adopted, would not require a change in either the court's judgment or the reasoning that supports it, then the proposition is dictum."), *and Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986) ("A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.").

The panel majority also seems oblivious to the risk of anachronistic error and to the disruption of settled expectations.  Congress passed the Voting Rights Act of 1965 in the wake of *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964), which provided for private enforcement of a federal statute without express authorization.  *Id.* at 433.  The Supreme Court then held in *Allen v. State Board of Elections*, 393 U.S. 544 (1969), that § 5 of the Voting Rights Act is privately enforceable without express authorization.  The Court reasoned that the statute was passed to protect a class of citizens against the denial of the right to vote, and that "[t]he achievement of the Act's laudable goal could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General."  *Id.* at 556.  Section 2 likewise forbids certain state action that results in the denial or abridgement of the right of any citizen to vote.  52 U.S.C. § 10301.  Since *Allen*, federal courts have decided hundreds of cases brought by private parties under § 2. *See Shelby County v. Holder*, 570 U.S. 529, 537 (2013) ("Both the Federal Government and individuals have sued to enforce § 2, see, *e.g.*, *Johnson v. De Grandy*, 512 U.S. 997 (1994), and injunctive relief is available in appropriate cases to block voting laws from going into effect, see 42 U.S.C. § 1973j(d).").  And in 1996, the Supreme Court majority in *Morse* said that § 2 is enforceable by a private right of action.

-7-

When Congress reenacted the Voting Rights Act in 1970, 1975, 1982, and 2006, it had no reason to add statutory language to authorize a right of action when the Supreme Court and other courts already had deemed explicit authorization unnecessary. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378-79 (1982); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696-99 (1979); *id.* at 718 (Rehnquist, J., concurring) ("Congress, at least during the period of the enactment of the several Titles of the Civil Rights Act, tended to rely to a large extent on the courts to *decide* whether there should be a private right of action, rather than determining this question for itself. Cases such as *J. I. Case Co. v. Borak*, *supra*, and numerous cases from other federal courts, gave Congress good reason to think that the federal judiciary would undertake this task."). The panel majority's only engagement with this important point is to equate the settled decisions in *Allen* and *Morse* with a pending case whose resolution was far from settled. 86 F.4th at 1215 n.5 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 (2015)).

The Supreme Court majority in *Morse* decided that it would be anomalous to conclude that § 5 and § 2 of the Voting Rights Act are privately enforceable, but that § 10 is not. According to the panel majority, § 5 and § 10 are privately enforceable, but § 2 is not. The panel opinion offers no reason why it would make sense to determine a private right of action for § 5 and § 10 under one legal standard and to treat § 2 under a different standard. If anything, the case for private enforcement of § 10 is weaker than for § 2 and § 5. *See Morse*, 517 U.S. at 286-88 (Thomas, J., dissenting). For this court to proceed on a hunch that a reconstituted Supreme Court would repudiate *Allen* and *Morse*, and thereby affirm a decision that refused to follow *Morse*, would be too clever by half. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997).

\*

But there is a more fundamental problem with the panel's decision: the ruling on whether the plaintiffs have a private right of action to enforce § 2 should not have been rendered at all. The plaintiffs established on appeal that the district court erred in dismissing the action without prejudice for lack of subject-matter jurisdiction.

-8-

Rather than reverse and remand, however, the panel issued an unnecessary decision on the merits and improperly altered the judgment for the benefit of the State appellees. The court should grant rehearing to vacate the panel decision and put the case back on a proper procedural track.

The first mistake occurred in the district court. The plaintiffs sued under § 2, alleging that a state reapportionment plan "dilutes Black voting strength" in violation of the statute. They moved for a preliminary injunction. The district court, on its own initiative, directed the parties to address whether there is a private right of action that authorizes a claim under § 2. The district court ruled, however, that the State defendants had forfeited any argument against a private right of action for purposes of the motion. R. Doc. 55, at 2. The court made clear that it would address the question only if the answer affected the court's subject-matter jurisdiction. *Id*. at 1-2.

The district court then issued an opinion that § 2 of the Voting Rights Act is not privately enforceable. On that basis, the court decided that it lacked subject-matter jurisdiction over a case brought by private parties. R. Doc. 100, at 38-39. When the Attorney General declined to intervene, the district court dismissed the action without prejudice. R. Doc. 102.

On the plaintiffs' appeal, the panel correctly recognized that the district court's ruling was erroneous. 86 F.4th at 1217-18. "It is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). There was plainly a non-frivolous argument for a cause of action under § 2 of the Voting Rights Act. The Supreme Court and other federal courts have reached the merits in numerous § 2 cases brought by private plaintiffs. *E.g.*, *Allen v. Milligan*, 599 U.S. 1 (2023). A majority of the Supreme Court in *Morse*, and every other federal court to decide the issue, has concluded that a private right of action exists. The district court's dismissal without prejudice for lack of jurisdiction was reversible error.

The proper disposition of the plaintiffs' appeal, therefore, is to reverse the dismissal and remand for further proceedings. At that point, the State defendants would be free to move to dismiss the complaint on the merits if they wished to pursue the right-of-action issue that they forfeited earlier. *See* R. Doc. 47. The plaintiffs would have an opportunity to amend their complaint to add an alternative claim for relief under 42 U.S.C. § 1983. Fed. R. Civ. P. 15(a)(1)(B). In light of *Morse* and decisions of other federal courts, the plaintiffs likely saw no need to assert an alternative claim in their original complaint. But if a motion to dismiss raised doubt, then a § 1983 claim would be the obvious response. The Supreme Court recently reaffirmed that § 1983 provides a cause of action to any person deprived of a right secured by a federal statute. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 171-72 (2023).

The panel majority, however, compounded the mistake of the district court. The panel did not reverse and remand based on the erroneous dismissal. The panel instead expanded the dismissal in favor of the State appellees. The panel did not merely affirm the judgment on an alternative ground as it suggested. 86 F.4th at 1218 (citing *Stafford v. Ford Motor Co.*, 835 F.2d 1227, 1232 (8th Cir. 1987)). The panel altered the district court's judgment and ordered a more punitive dismissal of the action *with* prejudice. *Id*.

This was improper. The State appellees did not cross-appeal, and "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Absent a cross-appeal, an appellee may not seek to enlarge its rights or to lessen the rights of its adversary. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479-80 (1999). The Supreme Court has observed that "in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of our holdings has ever recognized an exception to the rule." *Id*. at 480.

Cases aplenty hold that the cross-appeal rule prevents a court of appeals from converting a dismissal without prejudice to a dismissal with prejudice. *E.g.*, *In re Breland*, 989 F.3d 919, 922-23 (11th Cir. 2021); *Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc.*, 889 F.3d 30, 39 n.15 (1st Cir. 2018); *Tutein v. Insite Towers, LLC*,

-10-

572 F. App'x 107, 113-14 (3d Cir. 2014); *June v. Union Carbide Corp.*, 577 F.3d 1234, 1248 n.8 (10th Cir. 2009); *Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996); *Arvie v. Broussard*, 42 F.3d 249, 250 (5th Cir. 1994) (per curiam); *see* 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3904, at 266-69 (3d ed. 2022) ("The rule that a cross-appeal must be filed to secure a favorable modification of the judgment is stated and applied in many settings. . . . As shown by common examples an appellee cannot, without cross-appeal, seek . . . to convert a dismissal without prejudice into a dismissal with prejudice."). By failing to apply this firmly entrenched rule, the panel decision unfairly advantaged the State appellees, who had forfeited the merits argument espoused by the panel, and unfairly prejudiced the plaintiffs, who were deprived of their right to amend the complaint.[*]

\*

The author of the panel opinion now offers several new justifications for the panel majority's action. None is persuasive.

---

[*] Even on the panel majority's mistaken approach, this court could have allowed the plaintiffs to amend their complaint to add a claim under § 1983. But the panel majority apparently has "doubt" whether § 2 of the Voting Rights Act—which forbids state action that "results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color"—confers a right to vote. 86 F.4th at 1218. *But see Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 3948472, at \*3 (D. Kan. June 12, 2023) ("But in the face of clearly-worded rights-creating language, Defendants' roundabout interpretation does not rise to the level of 'colorable argument' as required to show a substantial ground for a difference of opinion."); *Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-cv-22, 2022 WL 2528256, at \*5 (D.N.D. July 7, 2022) ("It is difficult to imagine more explicit or clear rights creating language."); *League of United Latin Am. Citizens v. Abbott*, No. 21-CV-259, 2021 WL 5762035, at \*1 (W.D. Tex. Dec. 3, 2021) (three-judge court) (concluding that the text of § 2 "seems to mirror" the "paradigmatic rights-creating language" identified by the Supreme Court).

The panel author first blames the plaintiffs for not amending their complaint earlier to add a claim under 42 U.S.C. § 1983. But there was no need for an amendment in response to the district court's question whether the court lacked subject-matter jurisdiction. The district court plainly had jurisdiction. When the district court erroneously dismissed the action for lack of jurisdiction, the plaintiffs were entitled to a reversal of that judgment and a chance to amend the complaint on remand before the district court reached the merits on a future motion to dismiss. The plaintiffs were deprived of that opportunity only because the panel majority forced the case to a premature final judgment by ordering new relief on the merits for the non-appealing State defendants.

The panel author also seeks to recharacterize the panel decision as an exercise of discretion, *sub silentio*, to disregard the cross-appeal requirement. That is quite different from the panel opinion's claim that it was simply affirming the district court's decision on an alternative ground. 86 F.4th at 1218. But if the panel did assert discretion to make an exception to the cross-appeal rule, despite two centuries of Supreme Court decisions declining to do so, then the panel abused any such discretion here. Most of the author's newly discovered authorities do not even mention the cross-appeal requirement; they are not precedent for ignoring the rule. *Webster v. Fall*, 266 U.S. 507, 511 (1925). The one decision that does discuss the rule offers no support for the panel's action. *Marts v. Hines*, 117 F.3d 1504, 1506 (5th Cir. 1997) (en banc), recognized only "a limited exception whereby an appellate court in an *in forma pauperis* proceeding (in which the defendant has not been served and was not before the district court) may modify a district court's dismissal of a malicious or frivolous claim without prejudice to a dismissal with prejudice, even in the absence of a cross-appeal." *In re Skuna River Lumber, LLC*, 564 F.3d 353, 356 n.3 (5th Cir. 2009). No case supports disregarding the cross-appeal rule to grant expanded relief to a non-appealing party, on a forfeited argument, when the prevailing appellants have a fruitful avenue to pursue on remand.

The panel author further suggests that this court may ignore the cross-appeal rule if an appellant does not invoke the rule in a reply brief on the direct appeal. Again, this was not the panel's rationale; the panel opinion erroneously said that it

-12-

was affirming the judgment on an alternative ground. *See Morley Const. Co. v. Md. Cas. Co.*, 300 U.S. 185, 190-91 (1937). In any event, the Supreme Court and this court en banc have not decided whether the cross-appeal rule is jurisdictional and therefore exceptionless. If not jurisdictional, the rule is still "inveterate and certain," *id*. at 191, and is before a panel as a strong rule of practice to be followed in all but exceptional instances. We have not required an appellant to use its reply brief in support of its direct appeal to recite the settled rule. Another panel of this court recently enforced the cross-appeal rule without need for prompting by the appellant's reply brief. *Steckelberg ex rel. AMS v. Chamberlain Sch. Dist.*, 77 F.4th 1167, 1171 n.2 (8th Cir. 2023). Once the panel here granted relief to the non-appealing State defendants, the appellants petitioned for rehearing and objected that the panel improperly dismissed this case with prejudice. This court has been afforded ample opportunity to avoid the error.

The panel author, without apparent irony, quotes a notable opinion of Judge Richard Arnold in support of the panel decision. *See United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in the denial of rehearing en banc). Judge Arnold's opinion, of course, was featured by the Supreme Court in *Greenlaw*, a decision that firmly enforced the cross-appeal rule and reversed a decision of this court that disregarded it. 554 U.S. at 244. This case should be straightforward. The State defendants forfeited any challenge to the plaintiffs' right of action at this stage. The district court erroneously dismissed the action on its own motion for lack of jurisdiction. The plaintiffs filed a meritorious appeal and established that the district court had jurisdiction. There was no cross-appeal. The judgment should be reversed.

\*

The mistakes in this case are almost entirely judge-driven: a *sua sponte* order by the district court, and a panel's award of greater relief to State appellees who did not appeal. The panel's error is evident, but the court regrettably misses an

-13-

opportunity to reaffirm its role as a dispassionate arbiter of issues that are properly presented by the parties. Rehearing should be granted.

_____

January 30, 2024

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
        /s/ Michael E. Gans